# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

CASSANDRA NEUBAUER, individually and )
on behalf of all other similarly situated current )
citizens of Illinois and the United States, )
         )
                Plaintiff, )
         )     No. 3:24-cv-1160-NJR
    v. )
         )
CONTINENTAL MILLS, INC )
         )
                Defendant. )

## PLAINTIFF'S MEMORANDUM
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Before this lawsuit, Continental Mills claimed on the label of its Red Lobster Cheddar Bay Biscuit Mix that it "makes 10 biscuits" and "about 10 servings per container." Continental Mills also claimed that one "serving" consists of ⅓ cup (or 32 grams) of mix. But as Cassandra Neubauer discovered, using ⅓ cup of mix per biscuit does not yield ten biscuits per box. A box of mix yields only about 6.9 biscuits when made with the ⅓-cup-of-mix proportion Continental Mills puts on its label. So anytime consumers used the per-serving-proportion of mix to make fewer biscuits at a time, they always ended up with fewer than the promised ten servings per box. Ms. Neubauer alleges the shortfall is about 3.1 servings or 31.28% less than the promised ten servings per box.

And although consumers who make an entire box at one time may end up with ten biscuits, they only receive ten biscuits because they do not measure the mix and instead make the whole package and divide it into ten equal parts. But their ten biscuits are necessarily smaller than the promised ⅓-cup-of mix-per-serving sized biscuits. So the vast majority of Continental Mills customers end up cheated, either by making an entire box of smaller-than-promised biscuits or making fewer of the promised biscuits because they used the ⅓-cup-of mix-per-serving proportion Continental Mills told them on the label to use.

Continental Mills' practice is both deceptive and unfair within the meaning of the Illinois Consumer Fraud and Deceptive Practices Act (ICFA). The deception is plain: Continental Mills promises its customer ten ⅓-cup-of mix-per-serving sized biscuits per box, but it delivers either fewer or smaller biscuits. Despite all the ink it spills struggling to show that Ms. Neubauer has failed to plead a "deceptive act," Continental Mills never grapples with the explicit promise it makes on its labels but never delivers: ten ⅓-cup-of mix-per-serving sized biscuits per box. Promising one thing and knowingly delivering something less while purporting to have fully complied with the promise is misleading beyond any legitimate debate, and it is precisely what Ms. Neubauer has alleged.

Promising one thing and knowingly delivering something less also offends public policy; it is immoral, unethical, oppressive, and unscrupulous; and it causes substantial injury to consumers. And by being any one of those things to a sufficient degree (or more than one of them "to a lesser extent"), it is "unfair" within the meaning of and in violation of ICFA. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). Continental Mills has not attacked the sufficiency of Plaintiff's unfairness allegation, which alone is reason enough to deny its motion as to Count III.

Defendant also seeks dismissal on additional grounds, including federal preemption and standing. As discussed below, these arguments are procedurally or substantively flawed and in some cases both. Federal preemption is an affirmative defense and therefore generally not a proper basis for a Rule 12(b)(6) motion to dismiss. In any event, Continental Mills can comply with Illinois consumer law without running afoul of any federal requirements so her claims are not preempted. And she has standing because she has alleged a concrete, particularized, and pecuniary injury: she received fewer than the ten ⅓-cup-of mix-per-serving sized biscuits Continental Mills promised her. For these and other reasons discussed below, the Defendant's motion should be denied.

## BACKGROUND

Continental Mills makes mutually inconsistent representations on its box. It says one serving size contains ⅓ cup of mix. It also says one serving size contains 32 grams of mix. As Ms. Neubauer alleges, the problem is that ⅓ cup of the mix is not 32 grams of mix. Plaintiff alleges it weighs on average 46.9 grams. First Am. Complaint (FAC) at ¶¶ 23, 26 ("Preliminary testing of 168 samples from twelve different containers from twelve different lots of the Mix shows … that a 1/3 cup serving of the Mix actually weights 46.9 grams, on average" and "makes about 6.9—not 10—biscuits."). The boxes at issue contain 322 grams of mix. So it is metaphysically impossible for Continental Mills ever to deliver what it promised on its label: ten ⅓-cup-of mix-per-serving sized biscuits per 322g box.

So any consumer who uses ⅓-cup proportion—for example, a consumer who wishes to make fewer than ten biscuits at a time—will use more mix than necessary in each biscuit and lack sufficient mix to yield ten of the ⅓-cup-of mix-per-serving sized biscuits. That is a good thing for a company in the business of selling biscuit mix because the more mix a consumer uses in each biscuit, the more mix the consumer will need to achieve the desired number of biscuits the size that ⅓ cup of mix will make. It also defeats the expectation of the typical consumer, who receives seven ⅓-cup sized biscuits, not ten.

Consumers who do make the entire box of biscuits at one time are also shortchanged in a slightly different respect. Because each biscuit or "serving" actually uses about 46.9 grams of mix, there is only enough biscuit mix in each box to make about 6.9—not ten—of the ⅓-cup-of mix-per-serving sized biscuits ($322g \div 46.9g/serving = 6.9$ servings). Either way, Continental Mills overstates the number of servings in a 322-gram Cheddar Bay biscuit box by an average of 3.1 servings per box or 31.38% with respect to all of its customers. Tellingly, after Ms. Neubauer filed this suit, Continental Mills responded by changing its label. Defendant now only promises that the box "makes *up to* 10 biscuits" and it has removed the false ⅓ cup representation. Pl. Ex. A.

## ARGUMENT

### I. PLAINTIFF'S ALLEGATIONS THAT CONTINENTAL MILLS PROMISES MORE SERVINGS THAN IT DELIVERS ARE SUFFICIENT TO STATE AN ICFA CLAIM.

The Illinois Consumer Fraud Act (ICFA) "expands consumers' rights beyond those of the common law and provides broader protection." *Ash v. PSP Distrib., LLC*, 2023 IL App (1st) 220151, ¶ 24. The Act prohibits "unfair **_or_** deceptive acts or practices, … in the conduct of any trade or commerce." 815 ILCS 505/2 (emphasis added). "Recovery may be had for unfair as well as deceptive conduct." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). "Unfair" practices are those which (1) offend public policy; (2) are immoral, unethical, oppressive,

*418 or unscrupulous; or (3) cause substantial injury to consumers. *Id*. at 417-18. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*. at 418.

The ICFA also bans "any practice described in Section 2 of the Uniform Deceptive Trade Practices Act" (UDTPA). *Id*. The UDTPA defines "a deceptive trade practice" to include "represent[ing] that goods or services have … quantities that they do not have" and "engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(5) & (12). "To plead a deceptive practices claim under the ICFA, a private plaintiff must allege: (1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart Inc.*, 2024 WL 3282097, at *6 (7th Cir. July 3, 2024).

### A. Plaintiff's allegations that Continental Mills overstates the number of servings per box is a factually sufficient allegation of a "deceptive practice."

When determining the sufficiency of a plaintiff's allegations of a deceptive trade practice, "[c]ourts apply a 'reasonable consumer' standard in evaluating the likelihood of deception and look at this question in view of the 'totality of the information' available to the consumer at the point of deception." *Kahn*, 2024 WL 3282097, at *6. "Where, as here, the alleged deceptive practice involves misleading labels, the ICFA requires plaintiff to allege plausibly that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. (cleaned up).

In *Kahn*, the plaintiff alleged that Walmart charges more at checkout than the prices Walmart advertises on product shelves. *Id*. at *2. During the shopping trip that was the basis of that case, Walmart overcharged the plaintiff "nearly seven percent of the pretax total of his bill." *Id*. "In total, Kahn paid Walmart $1.89 in overcharges" for six items, which the court noted was "[s]mall change for Kahn as an individual, no doubt, but keep in mind the volume of Walmart's business." *Id*. The Seventh Circuit had no difficulty concluding that Walmart's challenged practices are likely to mislead reasonable consumers: "If shelf prices are not accurate, they are likely to mislead reasonable consumers." *Id*. at *6.

> Plaintiff plausibly alleges that Walmart's inaccurate shelf pricing is a deceptive act or practice within the meaning of the ICFA. There is nothing implausible about his allegations that Walmart's inaccurate shelf prices are likely to deceive a significant portion of reasonable consumers. It is neither "unreasonable" nor "fanciful" for consumers to believe Walmart will sell them its merchandise at the prices advertised on its shelves.

*Id*. The court also noted that Illinois "law assumes that consumers will rely on advertised prices," as evidenced by the fact that "[b]oth the ICFA and the UDTPA declare 'misleading statements of fact concerning the ... existence of ... price reductions' to be deceptive acts." *Id*.

The same is true here. Instead of alleging price discrepancies, however, Ms. Neubauer alleges quantity discrepancies: that Continental Mills overstates the number of servings in its biscuit mix boxes. As the Seventh Circuit easily found misrepresenting shelf prices to be a "deceptive practice," this Court should have no trouble concluding that Continental Mills' alleged quantity misrepresentation is also a "deceptive practice." For one thing, the UDTPA and ICFA (by incorporating the UDTPA) define deceptive acts to include "represent[ing] that goods … have … quantities that they do not have," 815 ILCS 510/2(a)(5).

The quantity term in a contract is self-evidently material to the vast majority of buyers in any kind of sales contract, and it is as important to consumers as anyone. Indeed, quantity is so important that it is the only term that Article 2 of the Uniform Commercial Code requires to be in

writing for the sale of goods for more than $500. *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 295 (7th Cir. 2002). "In a contract for the sale of goods, the court can supply all missing terms except the quantity term." *Ray Dancer, Inc. v. DMC Corp.*, 175 Ill. App. 3d 997, 1004 (2d Dist. 1988); *Forms World of Ill., Inc. v. Magna Bank, N.A.*, 334 Ill. App. 3d 1107, 1112, (5th Dist. 2002) ("In Illinois, the writing must contain a quantity term").

In consumer sales of food products, the importance of the number of servings a product delivers is further underscored by federal law which requires food manufacturers to state reasonably accurate serving sizes in common household measurements on their labels. Serving sizes are also material because they form the basis for computing all the other nutritional information required by federal law.[1] When the weight of a serving size is incorrect, the calorie, fat, protein, and carbohydrate content of that serving will necessarily be wrong, too. *Id*. Continental Mills' suggestion that a misrepresented quantity term on one of its label claims is not a "deceptive practice" defies the plain meaning of the phrase. Even if there may be some other set of circumstances under which that might be possible, Continental Mills has failed to offer ***any*** logic or authority—much less persuasive logic or authority—for such a conclusion on the facts Plaintiff alleges in her complaint.

### B. Continental Mills' challenge to Plaintiff's allegations of "deceptive practice" is no basis for dismissal of Plaintiff's ICFA "unfairness" claim (Count III).

Continental Mills challenges the sufficiency of Plaintiff's allegations of a *deceptive* practice and, on that basis, seeks dismissal of all of Plaintiff's ICFA claims. It does so without acknowledging that Plaintiff has pled both ICFA prongs—deceptive practices *and* unfairness. Continental Mills makes ***no*** argument that Count III should be dismissed for insufficient factual allegations on the sufficiency of Plaintiff's allegations of an "unfair practice." So even if there were any merit to

---

[1] https://www.niddk.nih.gov/health-information/weight-management/just-enough-food-portions #label. ("The food label tells you how many calories and how much fat, protein, carbohydrates, and other nutrients are in one food serving").

the challenge to Plaintiff's deceptive practice allegations, Continental Mills would still not be entitled to dismissal of Plaintiff's ICFA unfairness claim on that basis.

### C. Continental Mills' challenge to Plaintiff's factual allegations of "deceptive practice" is fact-based and thus improper on a 12(b)(6) motion.

Even before reaching the merits of Continental Mills' contentions, there is a threshold procedural reason the Court lacks any discretion to consider them at this stage: Continental Mills' arguments are fact-based. Of course, on a Rule 12(b)(6) motion to dismiss, a court is required to "treat the complaint's factual allegations as true and draw every factual inference in the plaintiff's favor." *Kahn*, 2024 WL 3282097, at *3. And as noted in the introduction, "[t]he reasonable consumer standard requires a practical and fact-intensive approach to consumer behavior," which is the reason that the question of "how reasonable consumers would interpret an ambiguous food label is typically a question of fact that should not be decided on the pleadings." *Crawford v. AriZona Beverages USA LLC*, No. 22-CV-220-DWD, 2023 WL 1100260, at *3 (S.D. Ill. Jan. 30, 2023).

Continental Mills has made *no* argument that Plaintiff's allegations were *not misleading as a matter of law* to state a claim of "deceptive practice," which is what it is required to demonstrate for a 12(b)(6) dismissal to be appropriate. *Crawford*, 2023 WL 1100260, at *3 ("a court may dismiss the complaint if the challenged statement was not misleading as a matter of law"); *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1158 (N.D. Ill. 2022) (dismissal is only proper "if the challenged statement was not misleading as a matter of law"). Continental Mills' motion to dismiss on "reasonable consumer" grounds should be denied for this reason alone.

### D. Continental Mills' fact-based challenge to Plaintiff's allegations of "deceptive practice" is wrong: _every consumer_ receives substantially less than what Defendant promises in _every sale_.

Continental Mills maintains (at 8, 16) that the serving size it describes on its labels is "immaterial to any reasonable consumer" because "[r]easonable consumers follow the baking instructions

and, here, would use the entire box of baking mix at once." It cites no authority of any kind from any jurisdiction for the proposition that a representation of quantity in a sale of goods is ever "immaterial," and Plaintiff's counsel are unaware of any. As the Seventh Circuit observed in *Kahn*, "Price is obviously a material term of consumer transactions. On appeal, Walmart wisely does not challenge the materiality of its alleged misrepresentations regarding price." 2024 WL 3282097, at *6 n.6. Perhaps Continental Mills should have followed Walmart's lead, given the patent materiality of quantity representations in sales contracts, as discussed *supra* at 6-7.

Continental Mills also badly misconstrues Plaintiff's allegations and legal theory. According to it:

> Plaintiff's entire theory of deception is apparently premised on the bizarre idea that consumers purchase a boxed baking mix with the intention of weighing out and baking one biscuit at a time; this is simply not realistic. Reasonable consumers follow the baking instructions and, here, would use the entire box of baking mix at once. As such, the weight of ⅓ cup of dry mix is entirely immaterial to a reasonable consumer. If a consumer is able to make 10 biscuits by following the package instructions, the challenged claims are not deceptive.

Mem. at 16. That is an unabashed fact-based argument and, to top it off, an evidence-free one, as well. Plaintiff does not mean to suggest that it would be proper to offer "reasonable consumer" evidence at this pleading stage; it would be wholly improper. Plaintiff's point is simply that when factual arguments *are* appropriate, even then they must be supported by evidence, unlike what Continental Mills has done here. It will likely never offer such evidence in support of its factual argument, however, because the argument is also logically fallacious.[2]

Continental Mills makes multiple quantity representations on its label, and to be ICFA-compliant, they all need to be true and not misleading. *See Integrated Genomics, Inc. v. Gerngross,*

---

[2] Whether there is anything "bizarre" or not "realistic" about the idea that a consumer might make one biscuit according to the proportions Continental Mills itself provides for one biscuit on its label, whether consumers in fact do so is *not* important to Plaintiff's theory nor is this the "premise" of Plaintiff's claims.

636 F.3d 853, 863 (7th Cir. 2011) ("a false statement may include a half-truth which, although technically accurate, is misleading because it omits important qualifying information that, had it been known, would have caused the plaintiff to act differently"). Continental Mills promises consumers 322 grams of mix in each box. It also promises ten biscuits, each of a defined serving size. The problem arises because Continental Mills makes two promises about the size of those ten biscuits that are inconsistent promises: that each serving will consist of about 32 grams of mix and that each serving will also consist of ⅓ cup of mix. The problem is that those two promises cannot both be true because—as Plaintiff factually alleges—⅓ cup of mix weighs about 47 grams, not 32. Taking as true Plaintiff's factual allegation about the weight of ⅓ cup of mix, then when a customer makes an entire box and divides the dough into ten biscuits, the biscuits/servings must mathematically consist of less than ¼ cup of mix per biscuit/serving—smaller biscuits/servings than the ⅓-cup biscuits/servings Continental Mills promises.

**E. An accurate net weight statement does not cure other deceptive statements.**

Continental Mills apparently labors under the misunderstanding that some fraction of representations on food labels may be false, so long as other representations are true. Otherwise, the fact that "Plaintiff does not contest that the net weight of the Product is accurate (322 grams)," Mem. at 8, is of no relevance. Defendant contends (at 19) that its accurate statement of the net weight of a box of mix (322 grams) forecloses Plaintiff's right to relief because "if you divide the net weight by the 32 grams of dry mix required to make one biscuit, you find that the Product contains enough dry mix to make 10 biscuits." But this assertion ignores the deceptive statement on the label—that a box yields ten biscuits when made with using ⅓ cup of mix, when in fact it yields only 6.9 biscuits.

The fact that the net weight representation may be true (a point which Plaintiff reserves the right to contest should discovery reveal it to be untrue) does not somehow excuse other quantity

representations Continental Mills makes on its label. A batting average of .500 or even .300 may be impressive in baseball, but it is abject failure when it comes to ICFA-compliant consumer labels

> "It is well established, and critical to the notion of preventing false advertising, that where an advertisement conveys more than one meaning, one of which is false, the advertiser is liable for the misleading variation. … A more appropriate statement of the principle in this case might thus be that *an otherwise false advertisement is not rendered acceptable merely because one possible interpretation of it is not untrue*."

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020) (quoting *Nat'l Comm'n on Egg Nutrition v. FTC*, 570 F.2d 157, 161 n.4 (7th Cir. 1977)). *Every* material representation on a consumer label must be true *and* not misleading; even true statements can sometimes give rise to liability. *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 33 (collecting cases for proposition that a "technically true" statement "may nevertheless be fraudulent where it omits qualifying material since a 'half-truth' is sometimes more misleading than an outright lie"). And therein lies Continental Mills' problem.

According to the label that Continental Mills itself wrote and displayed on every box of mix, one "serving" of a Cheddar Bay Biscuit is one biscuit comprising *⅓ cup of mix plus other ingredients*. Even when consumers use a whole box of mix and make ten biscuits, they do not receive ten servings made with ⅓ cup of mix; they receive ten *smaller* servings. Conversely, whenever a consumer makes biscuits according to the serving size described on the box (in other words, made with ⅓ cup of mix), they receive approximately seven servings, not ten. Either way, Continental Mills shortchanges consumers of the serving-size promise it makes on its label.

In *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019), the Seventh Circuit rejected a defendant's similar net weight argument. In *Benson*, a plaintiff sued Fannie May claiming that its "opaque packaging"—much of which contained empty space, known as "non-functional slack-fill"—"is deceptive because it causes consumers to believe that the boxes contain more chocolate than they actually do." *Id*. at 646. "The complaint asserts that reasonable

consumers rely on the size of packaging *to infer* the quantity of product that they are purchasing, so any extra slack-fill misleads consumers. Someone might think, for instance, that a box of a certain size would contain enough candy for the whole office group, only to be chagrined when it is opened and half the people leave empty-handed." *Id*. (emphasis added).

Like Continental Mills here, Fannie May relied on the weight representation on the box to defeat the claim (*id*. at 647), but the court rejected that argument. "[W]e cannot conclude that the information on the boxes is enough as a matter of law to avoid a finding of deception. The Food and Drug Administration takes the position that '*the presence of an accurate net weight statement does not eliminate the misbranding* that occurs when a container is made, formed, or filled so as to be misleading.'" *Id*. (quoting *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100)).

That reasoning applies with even greater force here, where Continental Mills did not merely imply that the container had ten servings, but it went even further and made a *second, affirmative* quantity representation on its label—the number of servings of a defined serving size—the truth or falsity of which can be empirically tested. Defendant would have this Court hold that an accurate net weight representation on a label absolves *as a matter of law* another representation on the label even if it is false, but there is no authority to support that proposition. As in *Benson*, Plaintiff's allegation that she and others attach importance to the represented number of servings of a defined size (*i.e.*, containing ⅓ cup of mix) of each such serving is enough to plead a deceptive or unfair act, as well as enough to plead what a reasonable consumer finds important.[3]

---

[3] Continental Mills also cites *Womick* and *Brodsky* in support of its net weight contention. In *Brodsky*, a case about the servings in a coffee product, "[t]he only issue [was] whether the 'up to' language [was] deceptive and likely to mislead." *Brodsky v. Aldi, Inc.*, No. 20 C 7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021). Here, there is no "up to" language at issue; indeed, Defendant adopted "up to" language *after* Plaintiff filed this case. Continental Mills fails to explain why consumers would interpret "makes ten biscuits" to mean "makes *up to* ten biscuits." *Brodsky*

Continental Mills continues in this vein, contending (at 16-17) "that one box of Product can yield ten biscuits" if a consumer makes a whole box: "given that consumers themselves divide the dough into 10 servings of biscuits, it is undeniable that one box of Product can yield ten biscuits." That is "undeniable" only because Continental Mills' argument is a textbook example of the logical fallacy known as a tautology: a statement that is true by virtue of its logical form alone. *Of course* a box yields ten biscuits whenever someone makes an entire box and then "divide[s] the dough into 10 servings of biscuits." *Id*. at 16. That would also be true no matter how egregiously Continental Mills lied about quantities and regardless of the size of a box: if a consumer makes the whole box—whether the box contains a truckload, a thimbleful, or 322 grams of mix—and then divides the dough into ten parts, the box will of course yield ten biscuits, though of wildly varying sizes. Even if that dough is perfectly divided into ten equal parts, none will ever be the serving size Continental Mills promises on its label: a "⅓ cup of mix" sized biscuit.

Continental Mills then concludes this part of its argument with what it apparently believes is a coup de grâce to Plaintiff's claims: Plaintiff does not deny that when a consumer makes the entire box of mix at one time and divides the dough into ten equal parts, the ten biscuits "consist of approximately 32 grams of dry mix." Mem. at 17. Plaintiff has not alleged that "that biscuits so-divided do not consist of approximately 32 grams of dry mix" because that is not her grievance. Her complaint is that Continental Mills promises a biscuit of one size (made with ⅓ cup of mix)

---

is inapposite.

In *Womick*, the plaintiff alleged that Kroger's coffee did not yield as many servings as represented. *Womick v. Kroger Co.*, No. 21-CV-00574-NJR, 2022 WL 673095, at *1 (S.D. Ill. Mar. 7, 2022). The plaintiff alleged that, following Kroger's serving size of 1 tablespoon of coffee for each six fluid ounce of cold water, the coffee product yields approximately 173 cups of coffee, not 235 as represented. *Id*. This Court held that the plaintiff had adequately pled ICFA violations because the canister of coffee did not make as many cups as represented using the serving size instructions on the canister. *Id*. *2-5. Here, too, Ms. Neubauer alleges that the ⅓ cup serving size representation yields fewer biscuits than advertised.

but—when the entire box is used at one time—delivers a 30% smaller biscuit. Continental Mills' problem is that it makes two mutually inconsistent promises on its label: ten servings each comprised of 32 grams of mix and ten servings each comprised of 47 grams (in other words, ⅓ cup) of mix. So by making good on the first of those promises, Continental Mills necessarily and invariably breaches the second promise with every sale. Which is to say Continental Mills fleeces consumers to the tune of approximately 30% on each sale of biscuit mix.

Plaintiff has alleged that she and class members "relied on the Mix's label to state the truth about the number of servings in the biscuit mix box," that they "expected to receive the number of servings stated on the label," and that Neubauer "would not have paid as much absent [Continental's] false and misleading serving-size statement." FAC at ¶¶ 29-30, 35; *see also id.* at ¶ 37 ("Defendant's serving-size misrepresentation is material in that it concerns the type of information upon which a reasonable consumer would be expected to rely in deciding whether to purchase the mix."). Even Continental Mills recognizes (at 14-15) that "[a] misrepresentation or omission of fact is 'material' if a consumer would have acted differently had they known the information, or if it concerns the type of information consumers would be expected to rely upon when making a decision." Plaintiff's has alleged that she would have acted differently had she known the truth and those allegations are sufficient.

## II.   PLAINTIFF HAS SUFFICIENTLY ALLEGED BREACH OF WARRANTY.

"To state a claim for breach of express warranty, the buyer must allege that the seller made: (1) an affirmation of fact or promise made to the plaintiff; (2) relating to the goods; (3) which becomes part of the basis of the bargain; and (4) guaranteeing that the goods will conform to the affirmation or promise." *Int'l Bhd. of Teamsters Local 734 Health & Welfare Trust Fund v. Phillip Morris, Inc.*, 34 F. Supp. 2d 656, 664 (N.D. Ill 1998). "To satisfy these elements, it is sufficient for [a] plaintiff[] to attach the express warranty to the complaint." *Indus. Hard Chrome, Ltd. v.*

*Hetran, Inc.*, 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999) (citing *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 546 N.E.2d 580, 595 (Ill. 1989)). In *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016), the plaintiff reproduced in his complaint the front and back label of the product, described the misrepresentations on the label, and alleged he would not have purchased the product had he known the truth. *Id*. at *18. Those allegations led the court to "reject[] CVS's argument that the amended complaint fails to allege facts sufficient to state a claim for breach of express warranty."

Ms. Neubauer's allegations are like the plaintiff's in *Gubala*, and those allegations are sufficient for the same reasons Gubala's allegations were. She reproduced the label in her complaint, described the misrepresentations on the label, and alleged she would not have purchased the biscuits had she known the truth—in other words, had she known she would receive only seven ⅓-cup-of-mix-per-serving sized biscuits, not ten as Defendant claims. FAC (ECF Doc. No. 21 at 4) ¶¶ 20, 22. Continental Mills contends (at 22) that Ms. Neubauer has failed to state a breach of express warranty claim because she does not plausibly allege that "Plaintiff does not plausibly allege that *the weight of ⅓ cup of dry mix is material*, thus it cannot form a part of the basis for the bargain." It also argues that "no reasonable consumer believes that the serving size and number of servings is a warranty that such elements are based solely on the dry packaged mix." Mem. at 22. Those arguments fail.

First, Plaintiff has not attempted to allege that the weight of ⅓ cup of dry mix is material to consumers. Notably, Continental Mills points to no part of the complaint that even suggests this is important to Plaintiff's claims. What Plaintiff alleges matters to consumers is that Continental Mills promises them ten ⅓-cup-of-mix-per-serving sized biscuits per box, but it delivers fewer or smaller biscuits. FAC at 2 ¶¶ 11-12, 39 ("Plaintiff and the Classes … received fewer servings than

what Defendant promised on its label"; "Plaintiff and purchasers of the Mix received on average 31.38% fewer servings than they bargained and paid for"). And as discussed earlier (at 6-7), quantity is a material element of any contract, which means a misrepresentation of the quantity term is necessarily material, too.

So it is true but irrelevant that Plaintiff does not allege that the weight of ⅓ cup of mix is "material" to consumers—irrelevant because that is not her claim. The weight of ⅓ cup of mix is *relevant* to her claim because it the weight discrepancy demonstrates that Continental Mills shortchanges consumers by failing to deliver the promised ten ⅓-cup-of-mix-per-serving sized biscuits per box. Continental Mills conspicuously fails to challenge the sufficiency of Plaintiff's actual allegations, and it does not dispute its quantity/serving-size representations are material.

Likewise, Plaintiff does not allege or even remotely hint that consumers "believe[] that the serving size and number of servings is a warranty that such elements are based solely on the dry packaged mix." This also is not her claim. And as also discussed earlier (at 8), how a reasonable consumers interprets a food label is a fact-intensive issue and "a question of fact that should not be decided on the pleadings." *Crawford*, 2023 WL 1100260. Continental Mills has thus offered the Court no legitimate basis for dismissing Plaintiff's breach of warranty claim.

## III. PLAINTIFF HAS SUFFICIENTLY PLED UNJUST ENRICHMENT.

The only basis Continental Mills offers for dismissing the unjust enrichment claim is that Plaintiff failed to state a claim for an ICFA violation. For all the reasons Continental Mills is wrong about Plaintiff's ICFA allegations, it is also wrong in its insistent that Plaintiff's unjust enrichment claim should be dismissed. *See McDonnell v. Nature's Way Prods., LLC*, 16 C 5011, 2017 WL 1149336, at *4 (N.D. Ill. Mar. 28, 2017) (declining to dismiss unjust enrichment claim where ICFA claim survived; when "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course,

unjust enrichment will stand or fall with the related claim") (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)).

## IV. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW.

Continental Mills has moved to dismiss all of Plaintiff's claims on federal preemption grounds. The Court should decline that invitation on procedural grounds, on the merits, or both. The procedural basis is that dismissal of a complaint on preemption grounds is improper on a 12(b)(6) motion, subject to one narrow exception that is inapplicable here. Second, Ms. Neubauer does not seek to require Continental Mills to include on its label anything, much less anything that is not identical to federal requirements, which is all that federal law preempts. She seeks only to hold Defendant liable for untruthful claims.

As Continental Mills acknowledges, "the Food, Drug, and Cosmetic Act (FDCA), as amended by the Nutrition Labeling and Education Act (NLEA), expressly preempts all state statutes and law that 'directly or indirectly establish any requirement for the labeling of food that is not identical to the federal requirements.'" *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1204 (9th Cir. 2023). "Even so, plaintiffs are entitled to seek relief pursuant to related state-law causes of action." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019). A defendant, however, generally may not move for dismissal under Rule 12(b)(6) based on an affirmative defense like federal preemption.

> Preemption, however, is an affirmative defense upon which the defendants bear the burden of proof. Affirmative defenses do not justify dismissal under Rule 12(b)(6). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. This is not one of those cases in which the plaintiff has pleaded herself out of court, and so the difference between Rules 12(b)(6) and 12(c) cannot be disregarded. The district court thus erred by penalizing plaintiff for failing to anticipate an affirmative defense in her complaint and dismissing the action based on FDCA preemption.

*Johnston v. Kashi Sales, L.L.C.*, 626 F. Supp. 3d 997, 1006 (S.D. Ill. 2022) (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (cleaned up); *accord Wilson v. CooperSurgical, Inc.*, No. 3:22-CV-1651-DWD, 2023 WL 6216933, at *6 (S.D. Ill. Sept. 25, 2023).[4]

Continental Mills does not contend that this case is one in which Plaintiff has pled herself out of court. It does not even discuss the procedural impropriety of a 12(b)(6) motion to dismiss on federal preemption grounds, much less why it should benefit from any exception to that general rule. This alone is adequate reason to reject Defendant's preemption argument, as the courts did in *Benson*, *Johnston*, and *Wilson*.

Continental Mills' preemption argument fares no better on the merits. The FDCA preempts state law only to the extent the latter seeks to impose labeling requirement that are different than the federal requirements. Ms. Neubauer seeks to impose no such thing here; indeed, she merely seeks to recover from Continental Mills what it promised on its labels: ten ⅓-cup-of-mix-per-serving sized biscuits per box. Nor does Ms. Neubauer seek to prohibit Continental Mills from including on its label anything federal requires to be on those labels. Continental Mills can comply with both federal and state law in at least two ways. First, it need not change its label if it wishes to continue promising ten ⅓-cup-of-mix-per-serving sized biscuits per box. It would simply need to include more mix in the box because 322g of mix delivers only seven such biscuits. Conversely,

---

[4] As this Court noted in *Wilson*:
It is true, as a practical matter, courts have "taken shortcuts" when the complaint leaves no doubt that there is a good affirmative defense. However, the Seventh Circuit has emphasized, it is safer to insist on compliance with the rules. The "shortcut," which has been followed in this Circuit, has also been described as a narrow and pragmatic exception to the above-described structure of the Rules. Absent an application of that exception, which is available if a plaintiff pleads [herself] out of court, the proper vehicle for resolving an affirmative defense is a Rule 12(c) motion for a judgment on the pleadings after the filing of an answer.
2023 WL 6216933, at *6 (cleaned up).

Defendant can also comply with state consumer law by removing the false representation that one serving size contains ⅓ cup of mix.

Either of these corrections would bring Continental Mills into compliance with state law without running afoul of any of the federal requirements. And indeed, after Ms. Neubauer filed this lawsuit, Continental Mills began doing the latter. Since being sued, it removed the ⅓ cup representation from its label, thus demonstrating it *can* comply both with any applicable FDA requirements as well as state consumer protection laws. *See* Pl. Ex. A. Its preemption defense is thus meritless.

## V.  PLAINTIFF'S ALLEGATIONS ARE SUFFICIENT TO ESTABLISH STANDING.

Continental Mills contends that Plaintiff has failed to plead standing sufficiently because she has not alleged a concrete and particularized injury-in-fact and has not alleged actual reliance. Both arguments are without merit.

Defendant insists (at 25) that Ms. Neubauer's allegations that she received fewer servings than represented and paid for servings she did not receive are unsupported. According to Defendant, "[t]he number of servings and serving size is truthful and unambiguous."

> There is no allegation that Plaintiff was unable to yield 10 biscuits from the Product, or that each biscuit was not made of approximately 32 grams of dry mix (plus water and cheese). Instead, Plaintiff's entire theory hinges on the allegation that ⅓ cup of dry mix weighs more than 32 grams—which, even if true—is entirely immaterial to reasonable consumers, irrelevant given the Product's directions for use, and does not affect the number of biscuits that a consumer can make from one box of Product.

Mem. at 25. This is merely a rehash of Continental Mills' failed ICFA arguments. And it is fatally flawed because it ignores the gravamen of Ms. Neubauer's claims, which to reiterate is that Continental Mills promised but failed to deliver ten ⅓-cup-of-mix-per-serving sized biscuits per box.

An ICFA plaintiff must plausibly plead that the defendant's deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th

Cir. 2010) (citing *Mulligan v. QVC, Inc.*, 382 Ill.App.3d 620 (1st Dist. 2008)). Actual loss may occur "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* Courts in this Circuit have on multiple occasions held that injury allegations like Ms. Neubauer's are sufficient. *See, e.g.*, *Biffar v. Pinnacle Foods Grp., LLC*, No. 16-0873-DRH, 2016 WL 7429130, at *4 (S.D. Ill. Dec. 22, 2016) (allegations that product was worth less than the product as represented and that plaintiff would not have purchased or would have paid less were sufficient); *accord McDonnell v. Nature's Way Prods., LLC*, 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017); *Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013); *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911-12 (N.D. Ill. 2011).

Ms. Neubauer's allegations that Continental Mills promised but failed to deliver ten ⅓-cup-of-mix-per-serving sized biscuits per box is a factual allegation that Plaintiff received fewer servings than represented and paid for servings she did not receive[5]—a concrete, particularized, and pecuniary injury-in-fact. Plaintiff therefore has standing.

Continental Mills also insists (at 25) that "ICFA claims require actual reliance on the allegedly deceptive business practice to qualify for standing to sue," relying exclusively on a California district court decision based on California law, *In re Ferraro Litig.*, 794 F. Supp. 2d 1107, 1111-12 (S.D. Cal. 2011). Whatever merit, if any, there may be in Defendant's assertions about

---

[5]  FAC at ¶ 11 ("Defendant caused economic harm to Plaintiff and the Classes because they *received fewer servings* than what Defendant promised on its label"; ¶ 12 ("Plaintiff and purchasers of the Mix *received on average 31.38% fewer servings* than they bargained and paid for"), ¶ 31 ("Plaintiff and Class Members *did not get what they paid for*"), ¶ 33 ("Because Plaintiff and Class Members *received fewer servings than represented*, the *value of the mix was materially less* than its value as represented by Defendant"); ¶ 35 ("The *Mix was worth less than what Plaintiff paid*, and *she would not have paid as much* absent Defendant's false and misleading serving-size statements"); ¶ 39 ("Plaintiff and Class Members *would either not have purchased the Mix or would have paid less for it* had they known the truth").

California law is of no moment here, however, because Ms. Neubauer's claims are based on Illinois law. And in Illinois, "reliance is not an element of statutory consumer fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019) (quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996); *accord MacLeod v. Commonwealth Edison*, 2024 IL App (2d) 230237, ¶ 49 ("The Consumer Fraud Act does not require actual reliance"); *see also supra* at 14 (elements of ICFA action). "Rather, it's the plaintiff's 'damage,' not his purchase, that must occur 'as a result of' the deceptive act or practice. Indeed, it was enough in *Connick* that the plaintiffs' purchases occurred after the allegedly fraudulent statements." *Vanzant*, 934 F.3d at 739 (cleaned up). Here, Continental Mills does not contest that Ms. Neubauer has alleged that the damage she suffered was caused by Defendant's misrepresentations: she received less than the ten ⅓-cup-of-mix-per-serving sized biscuits Continental Mills promised her.

## Conclusion

For the foregoing reasons, Continental Mills' motion to dismiss should be denied.

Respectfully submitted,

By:  *s/ Robert L. King*
        Robert L. King (ARDC 6209033)
        king@kinglaw.com
        THE LAW OFFICE OF ROBERT L. KING
        9506 Olive Blvd., Suite 224
        St. Louis, MO  63132
        (314) 246-0702

        Matthew H. Armstrong (ARDC 6226591)
        matt@mattarmstronglaw.com
        ARMSTRONG LAW FIRM LLC
        2890 W. Broward Blvd. Unit B, #305
        Ft. Lauderdale, FL 33312
        (314) 258-0212

        *Additional Attorneys for Plaintiff and the Proposed Classes*

David C. Nelson (ARDC 6225722)
dnelson@nelsonlawpc.com
NELSON & NELSON, ATTORNEYS AT LAW, P.C.
420 North High Street, P.O. Box Y
Belleville IL 62220
(618) 277-4000

Stuart L. Cochran (*pro hac vice application forthcoming*)
scochran@condontobin.com
Texas State Bar No. 24027936
CONDON TOBIN SLADEK THORNTON NERENBERG PLLC
8080 Park Ln, Ste 700
Dallas, TX 75231
(214) 865-3804

*Additional Attorneys for Plaintiff and the Proposed Classes*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which electronically delivered a copy of the same to all counsel of record.

_s/ Robert L. King_