IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CASSANDRA NEUBAUER,** individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 3:24-CV-01160-NJR |
| **CONTINENTAL MILLS, INC.,** | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

At the golden, warm, pillowy center of this lawsuit sits a culinary icon—the Red Lobster Cheddar Bay Biscuit. These crispy, buttery biscuits are familiar to and beloved by many. So much so, that many customers seek to recreate the cheesy, garlicky goodness from home. Plaintiff Cassandra Neubauer ("Neubauer") is one such customer. She purchased a box of the Red Lobster Cheddar Bay Biscuit Mix (the "Mix") from her local grocery store presumably to create that fight-over-the-last-one treat in her own kitchen. But evidently, she came up a few biscuits short. Despite the representations on the box that the Mix made 10 biscuits, she discovered that, based on the listed one-third cup serving size, she could only make about seven.[1]

The amended class action complaint (Doc. 21) contains the following images of the

---

[1] The following facts are derived from Neubauer's amended class action complaint (Doc. 21), and the Court accepts them as true for the purposes of Continental Mills's motion to dismiss.

Mix's packaging:[2]




Neubauer alleges that the front of the box lists the aggregate weight of the Mix as 322 grams and states that a box makes 10 biscuits. (Doc. 21, ¶¶ 2, 5, 20). On the box's Nutrition Facts panel, each serving size is described as one-third cup weighing 32 grams. (*Id.* at ¶¶ 3, 4, 22). The Nutrition Facts Panel also represents that the box contains about 10 servings per container. (*Id.* at ¶¶ 3, 21). According to Neubauer, one-third cup of the Mix actually weighs 46.9 grams—not 32 grams.[3] (*Id.* at ¶¶ 6, 23). Using a one-third cup serving size, which weighs 46.9 grams, makes approximately seven biscuits (equal to 6.9 servings). (*Id.* at ¶¶ 7, 26). Accordingly, Neubauer asserts that the number of servings in the Mix is misrepresented by an average of 3.1 servings per box, or 31.38%. (*Id.* at ¶¶ 8, 24, 25). Converted to consumer costs, as the purchase price of the Mix was $2.89, Neubauer and the class seek to recover $0.92 per box sold. (*Id.* at ¶¶ 13, 14).

According to Neubauer, Defendant Continental Mills, Inc. ("Continental Mills")

---

[2] The amended complaint did not indicate a source for these images.
[3] Apparently, Neubauer tested 168 samples from 12 different containers from 12 different lots of the Mix to arrive at this average weight. (Doc. 21, ¶ 23).

produces, markets, and sells the Mix throughout Illinois and the United States and is fully aware of their misrepresentation. (*Id.* at ¶¶ 9, 19). In light of these misrepresentations, Neubauer alleges that she and other potential class members were deceived by Continental Mills, who fraudulently charged them for servings of the Mix they could never consume. (*Id.* at ¶¶ 27-41). Further, Neubauer avers that she would not have paid as much for the Mix absent the false and misleading household measurement serving-size statements by Continental Mills. (*Id.* at ¶ 35). She hopes to purchase the Mix again, but risks future economic harm if the box continues to misrepresent the Mix's output. (*Id.* at ¶ 36).

Neubauer filed this suit as a putative class action in Illinois state court in March 2024. (Doc. 1-1). Continental Mills and since-dismissed Defendant Red Lobster Hospitality LLC timely removed the action to this Court. (Doc. 1). Neubauer seeks to certify two classes:

> **Illinois Class:** All Illinois citizens who purchased the Red Lobster™ Cheddar Bay Biscuit® Mix in the five years preceding the filing of this Complaint up through the date of notice.
>
> **Nationwide Class:** All United States citizens who purchased the Red Lobster™ Cheddar Bay Biscuit® Mix in the United States during the Class Period.

(Doc. 21, ¶ 44). Her amended complaint includes claims for breach of express warranty (Count I), deceptive and unfair practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts II and III), violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count IV), and, in the alternative, unjust enrichment (Count V). (Doc. 21). For relief, she seeks statutory, compensatory,

punitive damages, and/or restitution, costs and expenses, and injunctive relief. (*Id.*).

Continental Mills moves to dismiss the amended class action complaint for failure to state a claim. (Doc. 23). Neubauer filed a response in opposition (Doc. 28), and Continental Mills filed a reply in support of its position. (Doc. 29).

## SUBJECT MATTER JURISDICTION

This case was removed from the Circuit Court for the Twentieth Judicial Circuit in St. Clair County, Illinois, pursuant to the Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction to hear a class action if the proposed class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 625 (7th Cir. 2023) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Here, Neubauer is a citizen of Illinois, Continental Mills is a citizen of Washington, its state of incorporation and the home of its principal place of business, and the class that Neubauer seeks to represent are citizens of Illinois and other states across the country. (Doc. 1, pp. 5-6; Doc. 21, ¶¶ 14-15). Thus, there is minimal diversity between the parties. The Notice of Removal explains that the putative class consists of more than 100 members, and that the aggregate claims of the proposed class plausibly exceed $5 million, including any statutory damages, but exclusive of interest and costs. (Doc. 1, pp. 2-4). This Court, therefore, has subject matter jurisdiction over the action.

## LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief can

be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 555.

The court also must accept the complaint's well-pleaded factual allegations and draws all reasonable inferences—but not legal conclusions—in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

Continental Mills moves to dismiss this action in its entirety for failure to state a claim. Primarily, Continental Mills argues that Neubauer failed to plausibly allege deception under the reasonable consumer standard, which defeats her ICFA and common law claims. According to Continental Mills, Neubauer also cannot establish any likelihood of future harm for a cause of action or injunctive relief under the IUDTPA. Continental Mills also claims that Neubauer's claims are preempted, and she lacks standing.

Conversely, Neubauer contends that her allegations related to the false

representation of serving sizes are sufficient to state an ICFA claim as a deceptive and unfair practice. In addition, Neubauer avers that Continental Mills's failure to mention unfair practices under the ICFA warrants denial of their motion on Count III. Though the Mix's box contains an accurate net weight estimate, Neubauer argues that the one-third serving size statement remains deceptive and unfair. As to the breach of warranty and unjust enrichment claims, Neubauer stands by her allegations as sufficient as they follow suit with the ICFA claims. Further, Neubauer argues her claims are not federally preempted, and as an affirmative defense, preemption is not properly raised in a motion to dismiss. Finally, Neubauer argues that she has standing to bring all her claims.

### A. Deceptive Acts or Unfair Practices Under the ICFA (Counts II and III)

The ICFA aims to shield consumers against unfair or deceptive acts or practices, including but not limited to the use of deception, fraud, false pretense, false promise, misrepresentation, or concealment, or the omission of any material fact. 815 ILCS § 505/2. To state a claim under the ICFA, a plaintiff must allege facts showing: "(1) that the defendant engaged in a deceptive or unfair practice; (2) with the intent that the plaintiff (or others) rely on the deception; (3) that the act occurred in the course of trade or commerce; and (4) that the deception caused actual damages." *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024).

"[A] practice is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Courts apply a "reasonable consumer" standard when evaluating whether a statement is deceptive or has the likelihood to deceive, which factors in the totality of the information

available to the consumer at the point of deception. *Kahn*, 107 F.4th at 598. Under this standard, a plaintiff must show that "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

A plaintiff may allege that conduct is unfair without alleging that the conduct is deceptive. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Illinois courts consider three factors to determine if a practice is unfair: whether it (1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738-39 (7th Cir. 2019) (quoting *Batson v. Live Nation Entertainment, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014)). "A court may find unfairness even if the claim does not satisfy all three criteria." *Siegel*, 612 F.3d at 935. Ultimately, courts perform a case-by-case analysis to determine whether a practice is unfair. *Id.*

"If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant*, 934 F.3d at 738. That is, the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* For unfair conduct, Rule 9(b)'s heightened pleading standard does not apply. *Id.* at 739.

Continental Mills argues that Neubauer's theory of deception rests on an irrational assumption that consumers weigh out single one-third cup portions of dry mix to bake a single biscuit at a time. Reasonable consumers, on the other hand, make the entire box, especially given the label's baking instructions, which call for the consumer to stir

three-fourths of a cup of cold water and half a cup of shredded sharp cheddar cheese with the Mix to form a dough. Continental Mills contends that deception must mislead a consumer in a material respect, but because reasonable consumers follow the baking instructions and typically do not measure out one biscuit at a time, the weight of one-third cup of dry mix is immaterial. In addition, Continental Mills argues that the serving size should be evaluated with regard to the added ingredients and instructions that must be followed to actually make the biscuits, as opposed to only the inedible dry packaged mix.

Moreover, the Food and Drug Administration ("FDA") regulations, according to Continental Mills, require producers to represent a single serving of a mix in a common household measure that most closely approximates the amount of mix necessary to achieve the reference amounts customarily consumed per eating occasion—which for biscuits is 55 grams. *See* 21 C.F.R. §§ 101.9, 101.12. Continental Mills also invokes the FDA's acknowledgment that serving sizes can be impacted by sifting, stirring, or packing down the food material.

In response, Neubauer criticizes Continental Mills for raising only fact-based arguments, as opposed to arguments demonstrating that the Mix's label was not misleading as a matter of law, which are improper at the motion to dismiss stage. Neubauer highlights that the IUDTPA and ICFA (by incorporating the IUDTPA) define deceptive acts to include representation that goods have quantities that they do not have. *See* 815 ILCS 510/2(a)(5). And, alluding to basic contract law, Neubauer avers that quantity is a self-evidently material term for buyers in any transaction. According to

Neubauer, such an essential term cannot be immaterial as argued by Continental Mills.

To clarify the allegations in her complaint, Neubauer emphasizes that the Mix's box promises consumers 322 grams of product (which she does not contest) and an output of ten biscuits, but it also promises two inconsistent serving sizes—one of 32 grams of the Mix and one of one-third cup of the Mix, which she alleges weighs about 47 grams in reality. Thus, even assuming Continental Mills's understanding of reasonable behavior, when a consumer makes the whole box and divides the dough into ten biscuits, the sizes of the biscuits are significantly smaller than the one-third cup serving promised. And, even though the label includes an accurate net weight statement of 32 grams alongside the inaccurate household measure, Neubauer asserts that the deceptive statement is not cured. Finally, Neubauer charges that Continental Mills only addressed deceptive practices and failed to acknowledge, let alone challenge, her allegations in Count III for unfairness under the ICFA. So, Neubauer reasons, Continental Mills is not entitled to dismissal of those claims, even if it is successful in its other arguments.

In reply, Continental Mills argues that all of Neubauer's allegations for unfair and deceptive practices hinge on fraud and rely on the same conduct despite the amended complaint's passing reference to unfair practice. As such, Continental Mills asserts that it need not separately address the claims. Continental Mills also urges that the accurate net weight listed on the Nutrition Facts Panel cures any possible claim of deception premised on quantity. Because, unlike the weight of a volume measure (i.e. one-third cup), the true weight of the product is accurate and not variable. The box itself, Continental Mills highlights, also contains a statement that the product is sold by weight not volume.

The Seventh Circuit favors a practical and fact-intensive approach to consumer behavior to assess deceptive-advertising claims. *Bell*, 982 F.3d at 478. Often, whether a statement is deceptive is an issue of fact. *Id.* at 479. Similarly, assessing likelihood of consumer confusion is a question of fact. *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 948 (N.D. Ill. 2009). But "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477.

Here, the Court finds that Neubauer's alleged interpretation of the Mix's label is neither fanciful nor unreasonable, and judgment on the pleadings would be unjustified as to the ICFA claims. The front of the box states that the Mix makes 10 biscuits, and to Continental Mills's point, if a consumer prepares the biscuits according to the instructions on the box—which is likely how most consumers use the Mix—it does, in fact, yield 10 biscuits. But Neubauer alleges that consumers are lured into believing the Mix will produce 10 biscuits of a larger size based on the household measurement included on the Nutrition Facts Panel.

In evaluating the yield claim on the front of the box, it is entirely rational for a consumer to glance at the Nutrition Facts Panel to discern the rough size of each biscuit that they should expect. Listed in that panel, the box states: about 10 servings per container, serving size 1/3 cup mix (32g) and 1/8 tsp garlic herb blend (0.4g). While using the weight measure, basic math dictates that the overall weight of the Mix—322 grams—produces 10 biscuits using about 32 grams of the Mix for each. But that's not the only figure listed. A reasonable consumer may very well look at the one-third cup

measurement, visualize a certain size, and expect 10 biscuits of that size. Indeed, Neubauer's claims arise from the inaccuracy of the Mix's household measure, not reference amount or weight. While customers can back their way into the understanding that the 32-gram measurement is the accurate one (again, by dividing the total weight of the package by the weight-based serving size), "[m]any reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts." *Bell*, 982 F.3d at 476.

District courts have allowed consumer deception claims under similar state consumer protection statutes to proceed where a product's packaging displays inaccurate household measures that fail to closely match the weight of the accompanying reference amount. In those cases, like here, the weight was used to calculate the total number of servings. So, consumers were allegedly misled into believing the product contained more of the listed household measure serving sizes than they actually did. *See Yonan v. Walmart, Inc.*, 591 F. Supp. 3d 1291, 1299-1301 (S.D. Fla. 2022) (claims survived dismissal where plaintiff challenged a serving size listed as "1 tsp (2g)" for powdered coffee creamer but the closest household measure for two grams was actually three-fourths of a teaspoon resulting in fewer one-teaspoon servings than advertised); *see also Vigil v. Mars, Inc.*, No. 16-cv-03818, 2017 WL 8294273, at *1 (N.D. Cal. Jan. 9, 2017) (plaintiff sufficiently stated a claim for misleading labeling where the rice packaging listed a one-cup serving size next to a 140-gram reference amount, but the weight more closely matched a two-thirds cup and allegedly deceived customers into believing they bought more rice than the box contained); *see also Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450, 455-57

(S.D.N.Y. 2022) (plaintiff stated a claim for consumer deception where powdered coffee additive's household measure understated its density, which could mislead reasonable consumers into thinking that the product contained more teaspoon-sized servings than it did).

As Continental Mills explains, the federal regulations require producers to represent a single serving in a common household measurement. It stands to reason that this requirement makes nutrition labels easier for average consumers to decipher because those are the most familiar and commonly used forms of measurement. Thus, when the household measure is inaccurate or overstated, it could plausibly mislead reasonable consumers. The harm from a misleading label is not eliminated, as a matter of law, by the presence of inconsistent but more accurate information on the label like the weight of the product.

As to its materiality argument, Continental Mills is correct that a "label is deceptive if it is likely to mislead a reasonable consumer in a material respect[.]" *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). But its conception of materiality is based on a factual argument that the Court cannot assess at this stage. Continental Mills argues that the volume measurement is immaterial because consumers who follow the baking instructions will produce 10 biscuits with about 32 grams of dry mix in each, and consumers do not measure out one-third cup of dry mix to make one biscuit at a time. On the contrary, Neubauer argues that quantity is necessarily a material factor in deciding to purchase a product. And, in this case, Neubauer avers that she and other consumers expected a quantity of biscuits at a certain size, namely 10 biscuits of the size that

one-third cup of dry mix would make. The Court cannot say as a matter of law that the represented household measurement of one-third cup and the resulting size expectation of each biscuit is immaterial.

Next, the Court finds Continental Mills's argument that the serving size should be evaluated considering the added ingredients unpersuasive. The Nutrition Facts Panel makes no indication that anything other than the dry packaged mix is factored into the serving size and nutrient calculations. In fact, the label plainly states "1/3 cup **mix**." Moreover, its argument makes no sense considering the context of the 32-gram measurement placed in parentheses immediately next to the one-third cup mix measurement. If the 32-gram measurement is solely based on the dry mix, why would the one-third cup measurement be based on the dry mix plus added ingredients? This argument is unavailing.

Along with satisfying the reasonable consumer standard, Neubauer also pleads the circumstances constituting the purported fraud with requisite particularity. She claims Continental Mills sold the Mix in Illinois and nationwide as recently as January or February 2023 with an incorrect household measurement on the Nutrition Facts Panel of the box, which deceived customers into believing they would receive 10 biscuits of a larger size. She also alleges that this misrepresentation caused her and other class members to overpay for the product. This achieves the "who, what, when, where, and how" required under the heightened pleading standard.

Continental Mills did not separately address Neubauer's allegations of unfairness. In its view, the deceptive and unfair practices alleged overlap and rely on the same fraud

and underlying conduct. As to her unfair practices claims, Neubauer alleges that Continental Mills's practices are unfair because they "offend public policy and are immoral, unethical, oppressive, or unscrupulous, because they affect the serving size and the associated nutritional facts of the Mix" and provide consumers with false information about how much of the Mix they are receiving and its nutritional value. Further, Neubauer claims that the incorrect label caused economic injury to consumers who paid substantially more for the Mix, which promised larger serving sizes than it actually yielded. In addition, Neubauer alleges that her injury was based on Continental Mills's misrepresentations of the household measure serving size.

Taking these allegations as true, Neubauer's claims regarding unfair practices also meet the federal pleading standard, because she claims that Continental Mills engaged in unfair conduct and averred facts that, if proven, "make relief more than merely speculative." *See Benson*, 944 F.3d at 647. Accordingly, the Court finds that Counts II and III survive dismissal.[4]

Continental Mills also argues that these claims are preempted by federal law. A provision of the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), forbids states to impose "any requirement respecting any claim of the type described in section 343(r)(1) [of the FDCA] made in the label or labeling of food that is not identical to the requirement of section 343(r)." 21 U.S.C. § 343-1(a)(5). Thus, a state can impose identical requirements, and by

---

[4] Continental Mills's standing arguments entirely overlap with its arguments against the ICFA claims, and as such, the Court also rejects those arguments without regurgitating its analysis.

doing so be enabled, because of the narrow scope of the preemption provision in the NLEA, to enforce a violation of the Act as a violation of state law. *See Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). This is important because the FDCA does not create a private right of action. *Id.*

Taking the allegations in the amended complaint as true, the Mix's label fails to comply with FDA requirements that producers represent a single serving of a dry mix in a common household measurement that *most closely approximates* the amount of mix necessary to achieve the reference amounts customarily consumed per eating occasion and the number of servings per container. *See* 21 C.F.R. §§ 101.9, 101.12. Neubauer alleges an inaccuracy in the household measure used. Assuming Neubauer's experimental testing is accurate, which the Court must do at this stage, the one-third cup household measure does not closely approximate the relevant amount or equate the weight reference amount of 32 grams. This does not implicate preemption—instead, the amended complaint seeks to hold Continental Mills accountable to the federal requirements already in effect.

### B. Breach of Express Warranty (Count I)

Under Illinois law, to substantiate a claim for breach of express warranty, a plaintiff must allege that the defendant: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 714 (N.D. Ill. 2020). "Generally, a plaintiff must state the terms of the warranty alleged to be breached or attach it to the complaint." *Rudy v.*

*Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1162 (N.D. Ill. 2022) (internal quotation marks omitted).

Notably, Continental Mills's argument for dismissal of this claim focuses on the same reasonable consumer and materiality rationale the Court rejected above. Neubauer included pictures of the Mix's packaging in the amended complaint to demonstrate the express warranty delivered by the product. She alleges that Continental Mills affirmed and promised consumers 10 biscuits using one-third cup of the dry packaged mix per biscuit. This size and quantity promise, according to the amended complaint, induced consumers to buy the product. Indeed, Neubauer alleges that she would not have purchased the Mix had she known the actual size and quantity of the biscuits produced. She also states that the product failed to conform to its affirmations and promises by providing consumers fewer biscuits of the promised size. And, ultimately, these representations deprived consumers of the benefit of their bargain. Considering the allegations included in the amended complaint, the Court finds that Neubauer has sufficiently pleaded a claim for breach of express warranty.

### C. **Violation of IUDTPA (Count IV)**

Continental Mills argues Neubauer's request for injunctive relief pursuant to the IUDTPA should be dismissed because she fails to allege future harm. Neubauer does not appear to respond to this argument.

"The IUDTPA only allows consumers to sue for injunctive relief, and to state a claim under that Act, plaintiffs must allege a likelihood of future harm[.]" *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 961 (N.D. Ill. 2016). Put another way, the IUDTPA

applies only to persons likely to be damaged by the deceptive trade practice of another. *Id.* Because Neubauer is now aware of the alleged deception—32 grams of the Mix does not equal one-third cup—she is not likely to be harmed by such misrepresentation in the future. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) ("However, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."). Neubauer alleges that she seeks to purchase the Mix again, but only when she can do so with the assurance that the representations on the box are accurate. (Doc. 21, ¶ 76). This demonstrates that she is not likely to suffer future harm, as she has pledged to refrain from purchasing the Mix until the box contains accurate serving size statements. Accordingly, the Court agrees that injunctive relief under the IUDTPA is unavailable to Neubauer. As such, the Motion to Dismiss (Doc. 23) is granted in part as to Count IV.

### D. **Unjust Enrichment (Count V)**

Illinois law recognizes unjust enrichment as an independent cause of action. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). If such a claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim, tied to the related claim, will stand or fall with it. *Id.* at 517. Here, Neubauer's unjust enrichment claim rests on her ICFA claims, which, as explained above, she sufficiently pleaded. Accordingly, Neubauer's unjust enrichment claim survives dismissal along with those related claims.

## CONCLUSION

For these reasons, the Court **GRANTS in part and DENIES in part** the Motion to

Dismiss Plaintiff's Amended Class Action Complaint For Failure to State a Claim filed by Defendant Continental Mills, Inc. (Doc. 23). The motion is **GRANTED** as to injunctive relief, and Count IV of Plaintiff Cassandra Neubauer's amended complaint is **DISMISSED**. The motion is **DENIED** as to the remaining arguments. All other counts (Counts I, II, III, and V) survive dismissal.

This case will proceed on those remaining counts, and the Court will set a scheduling conference by separate notice.

**IT IS SO ORDERED.**

DATED:   March 20, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**